

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 6, 2023

**VIA ECF**
Honorable Valerie E. Caproni
United States District Court Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

    Re:    *United States v. Quadae Berger*, 22 Cr. 128 and 17 Cr. 511 (VEC)

Dear Judge Caproni:

    The defendant in this case, Quadae Berger, is scheduled to be sentenced on January 19, 2023, at 11:00 a.m., having pled guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 2. The parties anticipate that the defendant will admit that he violated his supervised release by possessing that firearm. For the reasons explained below, the Government submits that a sentence at the high end of the applicable Guidelines Range of 18 to 24 months' imprisonment is warranted in light of the separate harms and violations of the law presented by the underlying conduct and by the violation of supervised release.

    I.    **Offense Conduct and Procedural History**

    On or about March 27, 2020, the defendant was released from prison and began a two-year term of supervised release after serving a 20-month sentence imposed by the Honorable Sidney H. Stein, United States District Judge, for his participation in a racketeering conspiracy. Presentence Investigation Report, dated August 11, 2022 (the "PSR") ¶ 32. In that case, the defendant fired multiple shots at rival gang members and aided and abetted two other gang-related shootings. *Id.* In sentencing the defendant to a below-Guidelines sentence of 20 months, Judge Stein noted that the defendant participated in these shootings when he was young—under eighteen—and that he had "a lot going for [him,]" including supportive family and friends. *United States v. Berger*, No. 17 Cr. 511, Dkt. 31 ("2018 Sentencing Tr."), at 31 (S.D.N.Y. Oct. 23, 2018); *see also id.* at 20, 27.

    Approximately four months before his supervised release was set to expire, the defendant was arrested for possessing a firearm. Fourth Amended Violation Report, dated Nov. 9, 2022 (the "Fourth Violation Report"), at 1. On or about November 21, 2021, at approximately 4:57 a.m., police officers who were patrolling in an unmarked patrol car in the Bronx observed the defendant walking toward them. PSR ¶ 10. As the defendant walked, the officers saw what appeared to be a heavy object swinging in his sweatpants pocket. *Id.* ¶ 11. The officers slowed their car, and the defendant put his hands in the air and told them, in sum and substance, that he did not have anything. *Id.* At this point, the defendant had stopped walking, and the officers saw the outline of what appeared to be a firearm in his sweatpants pocket. *Id.* When the officers began to exit

their patrol car, the defendant ran. *Id.* ¶ 12. While running, he tripped, and a firearm fell to the ground next to him. *Id.* Officers placed the defendant under arrest and recovered the firearm, a stolen—and loaded—Colt Detective Special .38 caliber revolver. *Id.*

The defendant, who has a tattoo of a revolver that is accompanied by the text "REVOLVER 38 BOY!", confessed to the crime. *See id.* ¶ 14.

On November 21, 2021, the Probation Department filed the a violation report, charging that the defendant violated his supervised release by (1) committing the state crime of criminal possession of a weapon in the second degree, in violation of New York Penal Law § 265.03 (Grade B violation); (2) committing the state crime of criminal possession of a firearm, in violation of New York Penal Law § 265.01(B) (Grade B violation); (3) committing the state crime of criminal possession of a weapon in the fourth degree, in violation of New York Penal Law § 265.01 (Grade C violation); and (4) failing to work regularly at a lawful verifiable employment (Grade C Violation). *See* Amended Violation Report, dated Dec. 1, 2021, at 2–3. The Probation Department later added a fifth specification, charging that the defendant committed the federal crime of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g) (Grade B violation). *See* Second Amended Violation Report, dated Oct. 4, 2022, at 4. The Governmnt understands that the defendant intends to admit the fifth specification, which addresses the same conduct that is charged in the Indictment.

On March 1, 2022, the defendant was indicted for possessing a firearm, specifically the loaded Colt Detective Special .38 caliber revolver, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 2. The defendant pled guilty to the one-count Indictment on May 24, 2022, after receiving a letter from the Government pursuant to *United States v. Pimentel*, 932 F.2d 1029, 1034 (2d Cir. 1991). As set forth in the *Pimentel* letter, the Government believes the defendant's offense level is 13 and criminal history category is III, resulting in an applicable Guidelines range of 18 to 24 months' imprisonment. PSR ¶ 5. Probation concurs with this Guidelines calculation and recommends a sentence of 24 months' imprisonment on the underlying conduct, *see* PSR at 22, and a concurrent sentence of 24 months' imprisonment on the violation of supervised release, *see* Fourth Amended Violation Report at 6.

For the reasons discussed below, the Government believes that a sentence at the high end of the applicable Guidelines Range is appropriate in this case in order to account for both the underlying conduct and the violation of supervised release.

II.     Discussion

**1. Applicable Law**

Following *United States v. Booker*, 543 U.S. 220 (2005) and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005), the Guidelines continue to provide a critical touchstone. Indeed, while the Guidelines are no longer mandatory, they remain in place, and district courts must "consult" them and "take them into account" when sentencing. *Booker*, 543 U.S. at 264. As the Supreme Court has stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

After calculating the Guidelines range, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(l)–(7). *See Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant;

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

Further, in sentencing for a violation of supervised release, "a sentencing court 'may, after considering' a variety of factors set forth in § 3553(a)—including any relevant policy statements issued by the United States Sentencing Commission pursuant to 28 U.S.C. § 994(a)(3), *see* 18 U.S.C. § 3553(a)(4)(B)—revoke a defendant's term of supervised release and require the defendant to serve a term of imprisonment, if the court first determines that the defendant violated the terms of his or her supervised release." *United States v. Lewis*, 424 F.3d 239, 243–44 (2d Cir. 2005); *see* 18 U.S.C. § 3583(e).

In assessing the appropriate sentence, the goal of a revocation sentence is primarily "to sanction the violator for failing to abide by the conditions of the court-ordered supervision," in order to account for the breach of trust inherent in failing to follow the court-imposed conditions of supervised release. U.S.S.G. Ch. 7, Pt. A(3)(b). Thus, "at revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator." *Id.*

**2. The Court Should Impose a Sentence at the High End of the Guidelines Range**

A sentence at the high end of the applicable Guidelines Range of 18 to 24 months' imprisonment is sufficient and not greater than necessary when taking into account both the underlying conduct and the violation of supervised release. Such a sentence is warranted in light of the nature and circumstances of the instant offense and the history and characteristics of the

defendant, as well as the need to protect the public and to afford adequate deterrence of future criminal conduct.

A sentence at the high end of the applicable Guidelines Range is warranted to reflect the seriousness of the offense, to protect the public, and to deter the defendant. "Possession of a gun greatly increases one's ability to inflict harm on others and therefore involves some risk of violence. . . Without possession of guns such persons are far less capable of committing acts of violence. The prohibition of gun possession by previously convicted criminals seeks to protect society by reducing the risk of violence that may result from the possession of guns by persons inclined to crime." *United States v. Dillard*, 214 F.3d 88, 93 (2d Cir. 2000). Here, the defendant possessed a loaded, stolen firearm, as he walked on the streets of the Bronx in the early morning hours. That is dangerous.

This is especially true in light of the defendant's criminal history. He carried the firearm at issue while on supervised release for his prior participation in a racketeering conspiracy in which he was involved in three gang-related shootings in the Bronx—during one of which he was the shooter. He was under eighteen at the time of these shootings, and Judge Stein gave him a below-Guidelines sentence as a result. *See* 2018 Sentencing Tr. at 27 ("[T]he fact that you were so young when you did the act of shooting is the major reason for the variance here."). Judge Stein told the defendant at the time of the prior sentencing that the defendant had the "ability . . . to put this behind [him,]" and Judge Stein "want[ed] [him] to act on it." *Id.* at 26. Unfortunately, the defendant did not put all of his criminal conduct behind him. Although the defendant does not appear to have returned to his gang involvement, he possessed a firearm less than two years after getting out of prison—and while on supervised release. Even if he purportedly possessed this gun for his protection, such possession is nevertheless dangerous. The sentence the Court imposes should account not only for the seriousness of this offense and the other sentencing factors, but also the breach of the Court's trust evidenced by the defendant's violation of supervised release.

The defendant still has the "ability . . . to put this behind [him]" after serving the sentence imposed by the Court. The defendant accepted responsibility quickly, both admitting his possession of the firearm on the day of his arrest and expressing a desire to plead quickly to the new Indictment. But a sentence at the high end of the Guidelines is necessary to ensure that he does not possess a firearm again, putting other people's lives at risk, when he is released from prison this time.

### III. Conclusion

      For the reasons set forth above, the Government respectfully requests, in accordance with Probation, that the Court impose a sentence at the high end of the applicable Guidelines Range of 18 to 24 months' imprisonment.

Very truly yours,

DAMIAN WILLIAMS
United States Attorney

by: _Madison Reddick Smyser_
Madison Reddick Smyser
Assistant United States Attorney
(212) 637-2381